## Rems' Estate

*Joseph E. Gehringer,* for accountant.

*Harold A. Butz,* for substituted guardian.

GEARHART, P. J., October 11, 1933.—Allentown Trust Company was appointed guardian of Margaret D. Rems, a minor, by this court on December 17, 1918. On June 16, 1932, William D. Gordon, Secretary of Banking, by authority of the Act of June 15, 1932, P. L. 809, took possession of the business and property of Allentown Trust Company, and appointed L. Roy Campbell deputy receiver, as agent in the liquidation of said trust company. The said Allentown Trust Company is in process of liquidation, and as a result the deputy receiver has filed this account, which has come up before us for audit.

This estate has been duly advertised according to law.

On November 25, 1932, upon petitions of parties interested, we appointed The Allentown National Bank as substituted guardian.

The account indicates that there is a balance in the hands of the accountant in the amount of $12,390, which balance is represented by a mortgage participating certificate in the mortgage pool of Allentown Trust Company.

At the audit counsel representing Allentown Trust Company requested us to allow a 2 percent commission on the principal amount, to which counsel representing The Allentown National Bank excepted. The question arises as to what should be a proper item of compensation for the accountant.

The identical question was passed upon by the Orphans' Court of Philadelphia County in Millman's Estate, 17 D. & C. 566, where the facts are similar to those in the present case. In that case an insolvent corporate trustee was accounting for the purpose of transferring assets to a substituted trustee. Judge Gest there stated:

"The general rule is undoubtedly as stated, that a trustee is not entitled to charge commissions on the corpus of the estate until the trust has terminated. But there are some well-recognized exceptions to this rule. Thus, when a trustee dies and his account is filed by his personal representatives, commissions will be allowed in a sum commensurate with the services performed, the responsibility incurred and the length of time during which the responsibility continued, as in Wainwright's Estate, 27 Dist. R. 955, where the trustee died, and in Makin's Estate, 7 Dist. R. 126, where the trustee retired by agreement with the cestui que trust. See, also, Rominger's Estate, 28 Dist. R. 513. The latest case is Murray's Estate, 103 Pa. Superior Ct. 87, where the trustee died, and Wainwright's Estate is expressly approved and Makin's Estate referred to with apparent approval. Murray's Estate also referred to Mylin's Estate [32 Pa. Superior Ct. 504], relied on by counsel in the present case, and noted that there in the very beginning of the trust the trustee, who became insolvent, appropriated commissions, which it had no right to do. It is true that in Mylin's Estate the Superior Court said:

" 'Assuming, for present purposes, that the insolvency of the trustee was not induced by the careless or criminal conduct of its business, and that it was its misfortune rather than its fault which required the appointment of a new trustee, it by no means follows that the trust estate should be visited with the results of such misfortune. It requires no prophet's ken to foresee that a series of such misfortunes would hopelessly reduce the corpus of the estate, so that its income would utterly fail of the purpose originally intended.' "

Judge Gest further continued:

"I do not think, however apposite the quotation from Mylin's Estate may appear, that it was intended to lay down a hard and fast rule applicable to all cases like the present. The trustee has faithfully administered the trust for nearly fifteen years, sold real estate under the direction of the court, has not committed any default in reference to the assets of this estate, and it does not seem to me to be just to disallow these commissions, which I will consequently allow."

Upon exception to the auditing judge's opinion, the court in banc recognized the exceptions as drawn by Judge Gest to the general rule, but were of the opinion that the full commission of 3 percent should not be allowed, whereupon the same was reduced from $338.02 to $250. The court stressed the point that "the allowance is really made as compensation rather than a percentage commission".

Judge Henderson, writing a dissenting opinion, would deny the bankrupt trustee any compensation out of corpus. He grounds his dissent to the majority opinion on the premise that the life tenant was justified in assuming that the trustee would serve for the termination of the trust, pointing out that it is highly inequitable to compel the beneficiaries to pay a second set of commissions, this through no fault of their own, but due solely to the insolvency of the trustee.

Judge Henderson makes the following pointed observation: "It should, furthermore, be pointed out that such commissions go to swell the fund for the depositors, and had the estate been awarded a surcharge, not one penny of it could have been collected."

In the present case, the guardian has administered the trust for about 15 years. No complaint is lodged concerning the management of the affairs by the guardian, and under these circumstances we feel that the guardian is entitled to reasonable compensation. The general rule in this State is that a faithful and honest fiduciary is entitled to a reasonable compensation where he dies before the termination of the trust, or voluntarily retires: Wainwright's Estate,

27 Dist. R. 955; Rominger's Estate, 28 Dist. R. 513; Millman's Estate, 17 D. & C. 566.

Recognizing the force of the observation made by Judge Henderson, where he points out that the estate will be called upon through no fault of its own to pay a second commission, and the further fact that in the case of an insolvent corporate trustee, as in this case, the commission would go to swell the fund for the depositors, we have decided to allow as compensation out of corpus only such an amount as will compensate the defunct trustee for expenditures made in the way of clerical hire, attorney fees, and administration expenses in winding up its trust department. Counsel for the accountant has submitted to us a statement showing that the total assets in the trust department of the defunct Allentown Trust Company are invested in a participating mortgage pool in the amount of $1,250,000. The statement likewise shows that the defunct bank expends the sum of $335 per month in the way of clerical hire, counsel fees, rental, stationery, and postage. It is also estimated that 30 months from the time of taking possession by William D. Gordon, Secretary of Banking, will be required to settle the affairs of the various trust estates. It will thus be seen that the estimated expenses will total $10,050. If we were to allow a commission of 1 percent on the corpus invested in the mortgage pool, it would yield approximately $12,500, which in the opinion of counsel would adequately take care of all expenses necessary to the winding up of the trust department. We have therefore decided to allow the accountant 1 percent commission out of the corpus. This method of arriving at the compensation to be paid gives the fiduciary some compensation without unduly burdening the innocent beneficiaries, and within reasonable limitations prevents the swelling of the fund for general depositors at the expense of the trust estates.

We recognize the difficulty of working the matter out with mathematical precision, but we believe that in the case of this defunct bank, the method we used in arriving at the proper compensation is equitable and just to all concerned. We therefore allow compensation in the sum of $123.90.

And now, October 11, 1933, the report is confirmed nisi, subject to the above modification; in the absence of exceptions filed within 10 days herefrom, such confirmation shall become absolute, as of course.

From Edwin L. Kohler, Allentown, Pa.